UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:15-cv-61970-JIC

MICHAEL KORETSKY, FRANK KORETSKY, INTERNATIONAL VIDEO DISTRIBUTORS, LLC, BEAUMONT FUND, LLC, and LONGMEADOW TRADING, LLC,

      Plaintiffs,

      v.

SEYFARTH SHAW LLP, JOHN E. ROGERS, individually and d/b/a ROGERS & ASSOCIATES, JETSTREAM BUSINESS LIMITED, WARWICK TRADING, LLC, and SUGARLOAF FUND, LLC,

      Defendants.

_____/

**DEFENDANTS JOHN E. ROGERS, ROGERS & ASSOCIATES, JETSTREAM BUSINESS LIMITED, WARWICK TRADING, LLC, AND SUGARLOAF FUND, LLC'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1406(a) AND/OR MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure and Local Rule 7.1, Defendants John E. Rogers (known hereinafter as "JER"), Rogers & Associates (hereinafter "Rogers"), Jetstream Business Limited ("Jetstream"), Warwick Trading, LLC ("Warwick") and Sugarloaf Fund LLC, ("Sugarloaf") and collectively known as "Rogers Defendants" move to transfer this case to the Northern District of Illinois pursuant to 28 U.S.C. §1406(a) for lack of personal jurisdiction and improper venue, or alternatively to dismiss the Complaint (D.E. 1-2) as to the Rogers Defendants, and state as follows:

## I.    Introduction

Plaintiffs have sued JER and Rogers for professional malpractice, JER for Deceptive and Unfair Trade Practices, and Warwick and Sugarloaf for Breach of Contract. While Plaintiffs

are entitled to attempt to seek redress for alleged damages they contend were suffered as a result of the Rogers Defendants' alleged wrongdoings, they may only do so in accordance with the laws of the State of Florida and the United States Constitution. Plaintiffs cannot sue the Rogers Defendants in Florida. Nevertheless, without any factual basis to do so, that is exactly what Plaintiffs have done. Plaintiffs have not pled, nor can they prove, sufficient jurisdictional connections with the State of Florida to satisfy their burden of establishing jurisdiction over the Rogers Defendants pursuant to Fla. Stat. 48.193, or any other Florida Statute, as there is no connexity whatsoever between the causes of action and the State of Florida.

The Rogers Defendants have no offices in Florida. The Rogers Defendants took no actions in connection with Plaintiffs in Florida. They did not purposefully direct any actions to Plaintiffs in Florida. JER and Rogers only provided the legal services at issue out of offices in Illinois. They did not direct any communications to or correspond with Plaintiffs in Florida. By suing the Rogers Defendants in Florida, Plaintiffs improperly ignore the requirements of Florida's long-arm statute and applicable law, as well as the Rogers Defendants' due process rights.

The Complaint alleges that the Rogers Defendants are subject to the specific jurisdiction of this Court under Florida's long-arm statute because they allegedly committed torts, breached contracts, and caused injury to Plaintiffs through solicitation or service activities in Florida. [D.E. 1-2 ¶7, 9, 10, 11]. Although the Complaint states that "[t]he facts supporting this allegation are explicated at length below" (*id*.), they are not. The Complaint does not provide any factual support to establish a connection between the Rogers Defendants and Florida, or between any of the Defendants and Florida. *See infra* §III.A. More importantly, the Complaint cannot do so. *Id*.

2

All the legal services and advice provided by JER and Rogers to the Plaintiffs allegedly giving rise to the malpractice claims against them were provided out of Rogers' Illinois office; no services were purposefully directed by JER or Rogers to the Plaintiffs in Florida. *Id.* at §III.A.1. Because the Complaint cannot establish a proper basis to subject the Rogers Defendants to the jurisdiction of the Florida courts (see infra §III.A.1-2) and because the Rogers Defendants lack the minimum contacts with Florida necessary to satisfy due process requirements (id. at §§III.B.1-2), this action should be transferred to the Northern District of Illinois, or alternatively the Complaint against the Rogers Defendants dismissed for lack of personal jurisdiction[1]

This Court should also transfer this action on the separate and independent ground that Plaintiffs have filed this action in the wrong forum. *Id.* at §IV. Contrary to Plaintiffs' assertion, venue is not proper in this forum under 28 U.S.C. §1391(b)(2) because Plaintiffs have failed to allege, and cannot establish that any, let alone a substantial part, of the acts complained of occurred in this District or in Florida at all. Moreover, neither of the remaining bases of the venue statute (28 U.S.C. §1391(b)(1), (3)) supports a finding that venue is proper in this District. *Id.* Thus, because Plaintiffs cannot establish that this District is a proper venue for this action, the Complaint should be dismissed for improper venue, or this action should be transferred to the

---

[1] Although dismissal of the Complaint for lack of jurisdiction over a non-resident defendant is the customary relief, where the lack of jurisdiction is coupled with a finding of improper venue under §1406(a), the matter may be transferred to the proper forum, i.e., to a "district in which the case originally could have been brought, both with respect to venue and personal jurisdiction." *Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1356 (S.D. Fla. 2009) ["*Hemispherx*"]; *see Miller v. Berman*, 289 F. Supp. 2d 1327, 1336 (M.D. Fla. 2003) (finding that the Court lacked personal jurisdiction over the defendants and that venue was improper in Florida, and transferring the action to the Eastern District of Pennsylvania "where venue is proper" pursuant to 28 U.S.C. §1406(a) "[i]n light of the fact that Defendants reside in Pennsylvania and that the Court lacks personal jurisdiction over Defendants").

Northern District of Illinois, the forum in which this action could have originally been filed by Plaintiffs.

## II.  The Complaint's Factual Background Giving Rise to Plaintiffs' Claims[2]

JER joined Seyfarth as a partner in July 2003, and remained there until May 2008.  [D.E. 1-2, ¶7].  Prior to joining Seyfarth, and while affiliated with Seyfarth, certain entities were created to acquire "distressed Brazilian consumer debt" (collectively the "Rogers Entities"),[3] that Sugarloaf then used to operate its "Brazilian debt collection business" by selling the equity interests in certain of those entities to third parties as an investment that would create an income tax deduction.  *Id*. at ¶¶19, 25, 28, 29.  To operate "his Brazilian debt collection business," Distressed Asset Tax Shelters ("DAD Tax Shelters") and Distressed Asset Trust Tax Shelters ("DAT Tax Shelters") were utilized.  *Id*. at ¶¶16.  JER's "implementation and operation of his Brazilian debt collection business" – which involved JER "urging his clients, including Plaintiffs in 2003 and 2004, to purchase membership interests in various limited liability companies ('LLC Securities')" – "was a venture separate and distinct from his role as a partner at Seyfarth . . . , from which he personally profited."  *Id*. at ¶¶28-29, 30-35, 52-64.

Once Sugarloaf had an agreement for the sale of the LLC Securities to third parties, Sugarloaf would then utilize Seyfarth "to provide professional legal and tax services" to the Rogers Entities, and "to effect the sale and implementation of the alleged tax benefits of the

---

[2]  The factual background in this section is drawn from Plaintiffs' Complaint.  The allegations and characterizations therein are neither endorsed by nor admitted by the Rogers Defendants.

[3]  The Rogers Entities include Sugarloaf Fund, LLC ("Sugarloaf"), Warwick Trading, LLC (Warwick"), and Jetstream Business Limited ("Jetstream"), Portfolio Properties, Inc. ("Portfolio"), which is not a named defendant and is a defunct corporation and the sole shareholder of Jetstream, Beaumont Fund, LLC ("Beaumont"), Longmeadow Trading, LLC ("Longmeadow"), Queen Trading, LLC ("Queen"), and Bodensee Fund, LLC (Bodensee").  Beaumont and Longmeadow are named Plaintiffs, and Sugarloaf, Warwick, and Jetstream are named Defendants.  [D.E. 1-2, ¶¶4-5, 9-11].

DAD/DAT Tax Shelters." *Id*. at ¶39. Plaintiffs allege that these services provided by Seyfarth to the Rogers entities were "specifically for purposes of benefitting Plaintiffs." *Id*. at ¶¶40, 43, 44, 47, 50, 74, 81. According to the Complaint, JER was affiliated with Seyfarth until May 2008 when Seyfarth forced JER to resign. *Id*. at ¶145. Plaintiffs allege after leaving Seyfarth, JER continued to operate his Brazilian debt collection business, and utilize Sugarloaf as tax shelters. *Id*. at ¶¶104-28.

As a result of Plaintiffs' purchase of the LLC Securities, they allege that the "IRS has imposed and Plaintiffs have incurred tax penalties and interest with respect to their investment in the DAD Tax Shelters for the tax years 2003 through 2010." *Id*. at ¶157. Specifically, Plaintiffs allege that they have suffered, and will continue to suffer tax penalties as a result of [the] investment in the DAD Tax shelters created and sold to Plaintiffs by JER . . . and implemented by Seyfarth and JER." *Id*. at ¶158.

## III.  Argument

Florida law provides a two-step analysis to establish whether this Court may exercise personal jurisdiction over a nonresident defendant. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989); *see Wendt v. Horowitz*, 822 So. 2d 1252, 1257 (Fla. 2002).[4] The Court must first examine whether Florida's long-arm statute would provide jurisdiction over the nonresident defendant. If so, the Court must then determine "whether sufficient 'minimum contacts' are demonstrated to satisfy due process requirements." *Id*. (citations omitted). Both parts must be satisfied for a court to exercise personal jurisdiction over a non-resident defendant. *Venetian Salami*, 554 So. 2d at 502. The Complaint is deficient in both respects.

---

[4] "The reach of the Florida's long-arm statute is a question of Florida law." *Muskier v. Projectavision, Inc.*, 960 F. Supp. 292, 296 (S.D. Fla. 1997).

Based on the Rogers Defendants' jurisdictional challenge (including the supporting affidavits), Plaintiffs have the burden of proving by affidavit that this Court has personal jurisdiction over the Rogers Defendants, and that personal jurisdiction is proper. *Venetian Salami*, 554 So. 2d at 502. Where the affidavits may be harmonized, the trial court "will be in a position to make a decision based upon facts which are essentially undisputed." *Id*. at 503. Where, however, the affidavits directly conflict with one another and cannot be reconciled, Plaintiffs bear the burden of proof at any limited evidentiary hearing on this Motion. *See id*.; *Muskier*, 960 F. Supp. at 294-95.

**A.** ***Florida's Long-Arm Statute Does Not Provide Jurisdiction Over The Rogers Defendants***

Florida's long-arm statute (§48.193), which is strictly construed, sets forth the acts that will subject a foreign defendant to the jurisdiction of the Florida courts. *See Muskier*, 960 F. Supp. at 294. The Complaint alleges specific jurisdiction over the Rogers Defendants pursuant to subsections (1)(a)2 (committing a tort in the state) and (1)(a)6.a (causing injury to persons or property in this state for solicitation or service activities).[5] As expressly required by the statute, for the act to provide a basis for personal jurisdiction, the act itself must give rise to the cause of action.[6]

---

[5] Effective July 2013, the numbering of §48.193 was revamped. This revision, however, had no effect on the substantive statutory language and acts identified in the long-arm statute at issue in this case. The language in the prior version of the statute in subsections (1)(b) and (1)(f) mirrors the language now contained in §48.193(1)(a)2 and 6, respectively. Thus, the case law interpreting the prior subsections of the long-arm statute applies equally to the revised subsections.

[6] §48.193(1)(a) ("A person . . . submits himself . . . to the jurisdiction of the courts of this state for any cause of action ***arising from any of the following acts***: . . .") (emphasis added); *see Klayman v. Judicial Watch, Inc.*, 2013 WL 4780139, at *8 (S.D. Fla. Sept. 5, 2013) ("Although the term 'arising from' is somewhat broader than the concept of proximate cause, under Florida law there must nevertheless be some 'direct affiliation,' 'nexus,' or 'substantial connection' between the cause of action and the activities within the state.") (citations omitted).

1.  The Rogers Defendants Did Not Commit Torts in This State.

Under §48.193(1)(a)2, jurisdiction may be exercised where the cause of action "aris[es] from . . . [c]omitting a tortious act within this state." §48.193(1)(a)2; *see Arch Aluminum & Glass Co. v. Haney*, 964 So. 2d 228, 236 (Fla. Dist. Ct. App. 2007). A defendant need not be physically present in Florida to commit a tortious act in this state. *See Wendt*, 822 So. 2d at 1260. Jurisdiction may be conferred "through the nonresident defendant's telephonic, electronic, or written communications into Florida" so long as "the cause of action. . . arise[s] from the communications." *Id.* The plaintiff must establish that the non-resident defendant "committed a substantial aspect of the alleged tort in Florida." *Muskier*, 960 F. Supp. at 296; *L.O.T.I. Group Prods. v. Lund*, 907 F. Supp. 1528, 1532 (S.D. Fla. 1995). The focus of the analysis is "not on where a plaintiff ultimately felt damages, but where a defendant's tortious conduct occurred." *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 645 (Fla. Dist. Ct. App. 2013).

For this Court to exercise personal jurisdiction over the Rogers Defendants, a "substantial portion" of the allegedly tortious conducts identified in the Complaint giving rise to Plaintiffs' claims against the Rogers Defendants must have occurred in Florida. *See supra* §III.A.1.

a.  Plaintiffs Professional Malpractice Claim against JER.

The gist of Plaintiffs' professional malpractice claim against JER is that an attorney-client relationship existed between JER and Plaintiffs because JER provided professional legal services to Plaintiffs and certain Rogers Entities "for the benefit of Plaintiffs, which created a duty of care on the part of JER to Plaintiffs" (D.E. 1-2, ¶¶40, 50, 67, 74, 81, 170), and that JER allegedly breached its duty to Plaintiffs by (1) providing legal services "to both Plaintiffs and Rogers entities in DAD Tax Shelter transactions without advising Plaintiffs of the conflict of interest or acquiring a waiver of conflict" (*id.* at ¶¶65-69), (2) "preparing instruments that did not

7

qualify as promissory notes" (*id*. at ¶¶70-76), and (3) giving misleading and erroneous legal and tax advice (*id*. at ¶¶77-82). *Id*. at ¶¶ 65, 68, 75, 82, 171. The specific conduct by JER identified in the Complaint that allegedly constitutes its breach of duties to Plaintiffs and gives rise to Plaintiffs' malpractice claim against it include:

- drafting or preparing "documents to facilitate and memorialize Plaintiffs' purchase and/or investment in the DAD Tax Shelter" for the 2003 and 2004 purchases (the "2003 DAD Deal Documents" and "2004 DAD Deal Documents," respectively) (*id*. at ¶¶41, 45, 66, 78-79, 82, 100 and Exs. C-D);

- preparing "Form 1065 U.S. Income Tax Return of Partnership Income and Schedule K-1s for Plaintiffs' interest in Beaumont and Longmeadow" between 2004 and 2008 (*id*. at ¶¶48, 78, 80, 100); and

- preparing promissory notes for Warwick and Sugarloaf (*id*. at ¶¶70, 73, 75, 78, 82, 100).

Although Plaintiffs conspicuously fail to identify in which locale JER provided the above legal services – it is none other than Illinois.

JER was an attorney at Seyfarth, an Illinois law firm with no offices in Florida. (Ex. 1, Woodford Aff. 3). JER worked out of Seyfarth's Illinois office. [D.E. 1-2, ¶7]; (Ex. 2, JER Aff. 7); (Ex. 1, Woodford Aff. 9). As Plaintiffs concede, the drafting and preparing of any and all documentation, including the 2003 and 2004 DAD Deal Documents, promissory notes, and any subsequent income tax forms, took place in Seyfarth's Illinois office – irrespective of whether JER's services were provided for the "benefit of Plaintiffs" as alleged in the Complaint. [D.E. 1-2,¶37]; *id*. at ¶¶40, 44, 74; (Ex. 2, JER Aff.15). The documents drafted by JER were not drafted specifically for any person or entity in Florida, or intended to be used by any such person or entity in Florida. (Ex. 2, JER Aff. 16). Further, none of the documents drafted by JER involved or applied Florida law. (Ex. 2, JER Aff. 16). At no time, did JER travel to Florida for any purpose in connection with the legal services at issue in Plaintiff's malpractice claim. (Ex. 1, Woodford Aff. 13-15); (Ex. 2, JER Aff. 6). Further, any bills generated by JER for his legal

8

services were not sent to anyone in Florida, and no payments for such services were received from Florida. (Ex. 2, JER Aff. 28).

In addition, JER did not take any actions directed to any of the Plaintiffs in Florida. Any communication between JER and International Video was directed by JER to New Jersey.[7] International Video operated, and continues to operate out New Jersey. [D.E. 1-2, ¶3 (identifying International Video as "a New Jersey limited liability company")], [D.E 14-6, Ex. E, p.9 (identifying a New Jersey address for the company)]. The same New Jersey address for International Video was identified in the 2004 K-1 – allegedly prepared by JER – issued by Beaumont to International Video. (Ex. 2, JER Aff. 12). And, the transaction documents allegedly drafted for International Video were drafted by JER with the intention of complying with, and applying Illinois law. [D.E. 1-2, ¶73].[8]

As for the Plaintiff entities – Beaumont and Longmeadow – neither of these entities was located in, or had any connection with Florida. As conceded in the Complaint, Beaumont and Longmeadow were LLCs organized and controlled by JER, who lived and worked in Illinois during the relevant time period. *Id*. at ¶¶4, 5, 9, 26.e-f; (Ex. 2, JER Aff. 7-8). Indeed, the 2004 K-1 issued to Longmeadow identified an Illinois address for that entity. (Ex. 2, JER Aff. 10). The documents allegedly drafted by JER for these entities were also drafted with the intention of complying with, and applying Illinois law.[9] (Ex. 1, Woodford Aff. 17); (Ex. 2, JER Aff. 16). Further, upon selling certain membership interests in Beaumont to International Video, the 2004

---

[7] As evidenced by Plaintiffs own documents, the only Plaintiff that invested in JER's Brazilian debt collection business/Tax Shelters was International Video. *See* [D.E. 14-4, Ex. C, p.11]; D.E. 14-5, Ex. D, pp.26, 30, 81, 84; *id.* At D.E. 14-6, Ex. E pp.9, 12; *see also* (Ex. 2, JER Aff. 15).

[8] *See* [D.E. 14-4, Ex. C, p.9, 11]; D.E. 14-5, Ex. D, p.27, 30, 79, 81; *id.* at D.E. 14-6, Ex. E p.9-10.

[9] [D.E. 14-4, Ex. C, p.5]; D.E. 14-5, Ex. D, p. 75.

K-1 issued by Queen Trading to Beaumont identified International Video's New Jersey address as Beaumont's address. (Ex. 2, JER Aff. 11, Ex. B).

As for the Koretskys, they did not invest in Sugarloaf's Brazilian debt collection business in their individual capacity. (Ex. 2, JER Aff. 13). In fact, JER never dealt with or even met Frank Koretsky at all or even knew he was an investor. Frank Korestsky never completed any disclosure forms for SEC Compliance. (Ex. 2, JER Aff. 14). Notably, although the Koretskys now assert that they reside in Florida (D.E. 1-2, ¶¶1-2), there is no allegation in the Complaint that either of the Koretskys resided in Florida at any time from 2003 through 2011.

In 2006, JER did undertake the representation of Michael Koretsky, individually along with his wife, in connection with tax audit work based on a notice he received from the IRS about a tax transaction for the 2003 and 2004 tax years – representation that is not identified in the Complaint. (Ex. 1, Woodford Aff. 11); (Ex. 2, JER Aff. 17). However, none of JER's actions during this representation, occurred in, or was directed to Florida in any way. (Ex. 1, Woodford Aff. 11-12); (Ex. 2, JER Aff. 18-22). Seyfather's Conflicts Research Request issued on November 16, 2006 identifies Seyfarth's Illinois office as the location for the services provided by Seyfarth, and a Pennsylvania address for Michael Koretsky, which he identified as his "home address." (Ex. 2, JER Aff. 19). The firm's New Client Intake Form also identifies "Pennsylvania" as the "Matter Location." *Id*. at 20; D.E. 14-6. All correspondence or communications (including the engagement and consent letters, as well as other correspondence) between JER and Michael Koretsky in connection with the 2006 representation was directed to Michael Koretsky at his "home address" in Yardley Pennsylvania. (Ex. 2, JER Aff. 19-22).[10]

---

[10] As for Frank Koretsky, Seyfarth never represented him in any matters and had no direct correspondence or communication with Frank Koretsky in his individual capacity. (Ex. 1, Woodford Aff. 10); (Ex. 2, JER Aff. 13). Because only International Video was an "investor" in

All correspondence or communications between Michael Koretsky and Rogers in 2011 were sent to Michael Koretsky in New Jersey. (Ex. 2, JER Aff. 30-31).

Simply put, Plaintiffs' malpractice claim against JER does not arise from any actions, correspondence, or communications into Florida – JER did not take any actions in Florida, did not provide any legal services in Florida, and the documents prepared by JER in Chicago were not for use in Florida. (Ex. 2, JER Aff. 15, 16) Thus, because all of the alleged conduct by JER giving rise to Plaintiffs' malpractice claim occurred in Illinois, with no conduct by JER directed toward any of the Plaintiffs in Florida, the Court lacks personal jurisdiction over JER.[11]

> b. Plaintiffs' Professional Malpractice Claim against JER and Rogers.

Plaintiffs' professional malpractice claim against JER and Rogers are based on Plaintiffs' allegations that an attorney-client relationship existed between Rogers and Plaintiffs because JER through his law firm, Rogers, provided professional, legal, and tax services to Beaumont and Longmeadow from approximately May 2008 to 2010 (D.E. 1-2, ¶¶ 105) and that JER and Rogers breached their duty to Plaintiffs by (1) providing legal and tax advice to "Sugarloaf, a Rogers Owned and Controlled Entity, and Beaumont and Longmeadow, entities in which

---

JER's Brazilian debt collection business (not either the Koretskys, personally), and Frank Koretsky was and is a member of International Video, any contact with Frank Koretsky would have been through International Video and directed to its location in New Jersey. [D.E. 1-2, ¶3]; *see supra* n.7.

[11] *See Muskier*, 960 F. Supp. at 296 (finding the Court lacked jurisdiction over the defendant because "a 'substantial aspect of the alleged tort' was not 'committed' in Florida as required for personal jurisdiction under the tortious activity subsection of Florida's long-arm statute"); *Am. Torch Tip Co. v. Dykema Gossett PLLC*, 2011 WL 3171811, at *6 (M.D. Fla. July 8, 2011) (finding attorney's "communications into Florida and two trips to Florida in the course of representing Plaintiff in an out-of-state matter are insufficient to subject him to personal jurisdiction"), *report adopted* 2011 WL 31702852, at *1 (M.D. Fla. July 27, 2011); *Caryle v. Palm Beach Polo Holdgs., Inc.*, 842 So. 2d 1013, 1017 (Fla. 4th DCA 2003) (finding that the non-resident attorney was not subject to personal jurisdiction of the court where the plaintiff "failed to demonstrate that the causes of action alleged arose from the appellant's communications into Florida).

Plaintiffs held a substantial equity interest" ("represented Sugarloaf, Jetstream, Portfolio Properties, Queen Trading, and Bodensee Fund which at the same time owing a duty of care as attorneys to Plaintiffs, not of whose interest was in conflict to that of Rogers' clients…without disclosing the conflict nor acquiring a waiver of conflict" (*id.* ¶¶ 108, 110, 111, 113), and (2) giving misleading and erroneous legal and tax advice (*id.* ¶¶ 114-123). The specific conducts by JER and Rogers identified in the Complaint that allegedly constitutes their breach of duties to Plaintiffs and gives rise to Plaintiffs' malpractice claims against JER and Rogers include:

- JER and Rogers knew of should have known that the DAD Tax Shelter was illegal and illegitimate but continued to assert to Plaintiffs that the "DAD Tax Shelter was a viable and legitimate investment vehicle, destined to be upheld by the IRS." *(id.* ¶¶ 120);

- JER "continued promotion of the DAD Tax Shelter as sound, as well as its concealment from Plaintiffs of the material fact that the DAD Tax Shelter was flawed, and had been expressly invalidated by Congress, constituted a failure to meet the standard of care members of the legal profession commonly possess and exercise in providing legal services." (*id.* ¶¶ 123).

Although Plaintiffs conspicuously fail to identify in which locale JER and Rogers provided the above legal services- it can be none other than Illinois. (Ex. 2, JER Aff. 27).

JER is the sole proprietor of Rogers, a law firm with its only office located in Illinois. (Ex. 2, JER Aff. 2). All of the legal services provided to Plaintiffs by JER and Rogers was provided out of Illinois to either Beaumont Fund LLC, or Longmeadow Trading, LLC, were both Illinois limited liability companies (*id.* ¶¶ 4, 5). All legal and or tax advice provided to Plaintiffs by JER and Rogers was provided out of Illinois and was directed to either New Jersey or Pennsylvania. JER and Rogers did not take any actions regarding any of the Plaintiffs in Florida. At no time did JER or a representative of Rogers travel to Florida for any purpose in connection with the legal services at issue in Plaintiffs' malpractice claim. (Ex. 2, JER Aff. 29). Any bills generated by JER and Rogers for legal services were not sent

to anyone in Florida, and no payments for such services were received from Florida (Ex. 2, JER Aff. 28). All correspondence and communications between JER and Rogers and Plaintiffs were sent to Michael Koretsky at his "home address" in Yardley Pennsylvania or to New Jersey.

It is abundantly clear that Plaintiffs' malpractice claims against JER and Rogers does not arise from any tortious conduct within Florida, or any solicitation or service activities within Florida by JER and Rogers. JER and Rogers did not take any actions in Florida, and did not provide any legal and/or tax advice to Plaintiffs in Florida. Since the alleged conduct by JER and Rogers giving rise to Plaintiffs' malpractice claims did not occur in Florida, the Court lacks personal jurisdiction over JER and Rogers.

   c. Plaintiffs' Florida Deceptive and Unfair Trade Practices Act Claim against JER.

Plaintiffs' Deceptive and Unfair Trade Practices Act claim against JER is based upon Plaintiffs' allegations that JER authorized and appointed Agresti as his agent to market and sell the DAD Tax Shelter. The specific conduct by JER identified in the Complaint that gives rise to Plaintiffs' Deceptive and Unfair Trade Practices Act claim against JER include:

- Agresti as an agent of JER placed advertisements in nationally circulated magazines promoting an investment opportunity in Brazilian distressed debt. (*id.* ¶¶190);

- Through a series of communications between Plaintiffs and Agresti, Agresti "represented to Plaintiffs that (i) the DAD Tax Shelter was, first and foremost an investment opportunity with the potential for beneficial tax treatment; (ii) the DAD Tax Shelter had been thoroughly reviewed by Seyfarth, a multination law firm; (iii) Seyfarth approved the legal bona fides of the DAD Tax Shelters; and (iv) Seyfarth would draft and execute the necessary documents, and would defend any investor in litigation should the need arise." (*id.* ¶¶ 35);

13

- Agresti was directed to continue to contact Plaintiffs and encourage them to invest anew in 2004 DAD Tax Shelter by making false statements of material fact (*id.* ¶¶ 193, 194, 195).

Plaintiffs conspicuously fail to identify any tortious acts were committed in Florida, and whether Plaintiffs were actually solicited or provided services within Florida. In fact, Plaintiffs fail to even mention which national magazines in which Agresti advertised, in which magazine Plaintiffs saw advertisements, and where the Plaintiffs were contacted or reviewed such alleged magazines.

Agresti was not an agent of JER. JER never directed Agresti to place any advertisements, let alone advertise in Florida. (Ex. 2, JER Aff. 34-36). Any contact between Agresti and Plaintiffs was at the behest of Agresti as he had an independent engagement letter with Plaintiffs; and was not at the direction of JER. (Ex. 2, JER Aff. 35). At no time did JER or a representative of JER travel to Florida for any purpose in connection with allegations in Plaintiffs' Complaint. JER did not take any actions directed to any Plaintiffs in Florida. Any communications between JER and Plaintiffs were directed to either Illinois, Pennsylvania or New Jersey.

Plaintiffs did not invest in the Brazilian debt collection business in their individual capacity. (Ex. 2, JER Aff. 13). All of Plaintiffs' entities were located in either Illinois or New Jersey and all dealings, communications, services, and solicitations were done through Plaintiffs entities.[12]

Plaintiffs' Deceptive and Unfair Trade Practices claim does not arise from actions, correspondence, communications, or advertisements sent into Florida. Plaintiffs have no evidence to support their allegations that this Court has personal jurisdiction over JER as

---

[12] Plaintiffs' entities include International Video Distributors, LLC ("IVD"), Beaumont Fund, LLC ("Beaumont"), and Longmeadow Trading, LLC ("Longmeadow").

Plaintiffs have failed to allege that JER committed a tortious act within Florida and/or that JER solicited or provided services within Florida.

> d. <u>Plaintiffs' Breach of Contract Claim against Warwick.</u>

Plaintiffs' breach of contract claim against Warwick arises out of a Membership Interest Purchase Agreement which was entered into on or about November 11, 2003 (*id.* ¶¶ 212). Plaintiffs further allege that Warwick breached the contract by failing to perform material terms including:

- Failing to deliver to Koretsky the Beaumont membership interests (*id.* ¶¶ 223);

- Warwick violated the IRC 721, the Step Transaction Doctrine, and the Economic Substance Doctrine by selling a worthless asset (*id.* ¶¶ 224);

- Warwick's violated IRC 165(c)(2) as its primary purpose for selling a worthless asset was to avoid taxes. (*id.* ¶¶ 225);

- Warwick's purpose was in contravention of section 1.5 of the Operating Agreement of Beaumont and section 6 of the Articles of Incorporation (*id.* ¶¶ 226, 227).

Plaintiffs purposely fail to allege that the Contact with Warwick has any connection with Florida due to the utter lack of evidence. To the contrary, the contract with Warwick was not entered into in Florida; the contract was drafted in Illinois. The contract complied with and applied Illinois law. No terms of the contract were to be performed in Florida, and neither Warwick nor any representative of Warwick contacted Koretsky in Florida regarding the contract. (Ex. 2, JER Aff. 37-41).

Additionally, section 6.6 of the Contract- titled Jurisdiction "Any legal action or proceeding against any party with respect to this Agreement may be brought in the courts of Illinois located in Cook County or of the United States for the Northern District of Illinois, and, by execution and delivery of this Agreement, the parties hereby irrevocably accept for

themselves and in respect of their property, generally and unconditionally, the jurisdiction of the aforesaid courts. Nothing herein shall affect the right of any party to commence legal proceedings or otherwise proceed against any other party in any other jurisdiction." (D.E. 14-4, Ex. C, p. 25). It is clear from the reading of this section that both parties only intended for Illinois courts to have jurisdiction over any lawsuit arising out of the Contract.

Plaintiffs fail to allege that Warwick committed a tortious act within Florida and/or has solicited or provided services to Plaintiffs in Florida which caused injury to Plaintiffs within Florida. As such, Plaintiffs have failed to plead sufficient facts to establish personal jurisdiction over Warwick.

e. <u>Plaintiffs' Breach of Contract Claim against Sugarloaf.</u>

Plaintiffs' breach of contract claim against Sugarloaf arises out of a Membership Interest Purchase Agreement which was entered into on or about October 15, 2004 (D.E. 1-2. ¶¶ 233). Plaintiffs allege that Sugarloaf breached the contract by failing to perform material terms including:

- Failing to deliver to Koretsky the Longmeadow membership interests (*id.* ¶¶ 244);

- Sugarloaf violated the IRC 721, the Step Transaction Doctrine, and the Economic Substance Doctrine by selling a worthless asset (*id.* ¶¶ 244a);

- Sugarloaf violated IRC 165(c)(2) as its primary purpose for selling a worthless asset was to avoid taxes. (*id.* ¶¶ 244b);

- Warwick's purpose was in contravention of section 1.5 of the Operating Agreement of Beaumont and section 6 of the Articles of Incorporation (*id.* ¶¶ 244c and d).

Plaintiffs have failed to allege that the Contact with Sugarloaf has any connection with Florida. The contract with Sugarloaf was not entered into in Florida. The contract was drafted in Illinois. The contract complied with and applied Illinois law. No terms of the contract were to

be performed in Florida, and neither Sugarloaf nor any representative of Sugarloaf contacted the Koretskys in Florida regarding the contract. (Ex. 2, JER Aff. 42-47).

Additionally, section 6.6 of the Contract- titled Jurisdiction "Any legal action or proceeding against any party with respect to this Agreement may be brought in the courts of Illinois located in Cook County or of the United States for the Northern District of Illinois, and, by execution and delivery of this Agreement, the parties hereby irrevocably accept for themselves and in respect of their property, generally and unconditionally, the jurisdiction of the aforesaid courts. Nothing herein shall affect the right of any party to commence legal proceedings or otherwise proceed against any other party in any other jurisdiction." (D.E. 14-5, Ex. D, p. 13-14). It is clear from the reading of this section that both parties only intended for Illinois courts to have jurisdiction over any lawsuit arising out of the Contract.

Furthermore, Plaintiffs have failed to establish that Sugarloaf committed any tortious acts within Florida or caused Plaintiffs injury by either soliciting or performing services in Florida. As such, Plaintiffs have failed to plead sufficient jurisdictional facts to bring this action within the ambit of the long-arm statute.

2. Plaintiffs have failed to meet the first prong of the Jurisdictional Analysis

Based upon the aforementioned, Plaintiffs have failed to allege any facts which would meet the criteria in Florida Statute 48.193, and confer this Court with personal jurisdiction over any of Rogers Defendants. Since Plaintiffs have failed to meet the first prong of the jurisdictional analysis it is not necessary to go any further. However, assuming *arguendo*, that Plaintiffs meet the first prong, Plaintiffs still have failed to pled sufficient facts to confer personal jurisdiction over the Rogers Defendants or any of them.

17

**B. Exercising Specific Jurisdiction Over The Rogers Defendants Violates Due Process.**[13]

The constitutional prong of *Venetian Salami* test "is controlled by United States Supreme Court precedent interpreting the Due Process Clause and imposes a more restrictive requirement" than the statutory prong.[14] *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1207 (Fla. 2010) (quoting *Wendt*, 822 So. 2d at 1257) (quoting *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 584 (Fla. 2000)). Jurisdiction may be exercised over a nonresident defendant only if the nonresident "maintains 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *Id.*

    1.  The Rogers Defendants Lack the Requisite Minimum Contacts With Florida.

The minimum contacts analysis for specific jurisdiction focuses on "a 'relationship among the defendant, the forum, and the litigation." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ["*Helicopteros*"] (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). To establish the requisite minimum contacts, "the defendant's contacts within the forum state must be such that she should reasonably anticipate being haled into court there." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996). "[F]or a nonresident to

---

[13] Because Plaintiffs have failed to satisfy the threshold statutory prong of the *Venetian Salami* test, this Court need not reach the constitutional prong. *See Muskier*, 960 F. Supp. at 297. The Rogers Defendants provides this Court with the constitutional analysis to further support this Court's finding that the Rogers Defendants is not subject to the jurisdiction of this Court under the long-arm statute.

[14] *See Venetian Salami Co.*, 554 So. 2d at 502 ("[E]ven though a nonresident may appear to fall within the wording of a long-arm statute, a plaintiff may not constitutionally apply the statute to obtain jurisdiction in the absence of the requisite minimum contacts with the forum state.").

anticipate being haled into a Florida court, it is essential that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within Florida, thus invoking the benefits and protections of its laws." *Biloki v. Majestic Greeting Card Co.*, 33 So. 3d 815, 821 (Fla. Dist. Ct. App. 2010) (relying on *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1995)). "This 'purposeful availment' requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (internal citations omitted). Under this framework, the Rogers Defendants could not reasonably anticipate being haled into a Florida court to defend against Plaintiffs' claims arising from its actions in Illinois on behalf of clients domiciled in New Jersey and Pennsylvania.

The Rogers Defendants did not deliberately or purposefully affiliate themselves with Florida let alone in connection with the Plaintiffs. *See supra* §III.A.1. The Rogers Defendants did not exercise the "privilege of doing business" with the Plaintiffs in Florida, or "enjoy[] the benefits and protections of the laws" of Florida for any dealings with the Plaintiffs. (Ex. 2, JER Aff. 2, 5, 6, 7, 8, 16, 23-25, 27, 28, 31-33, 37-47). The Rogers Defendants never committed an act, nor caused a consequence that lent any air of foreseeability to being haled into a Florida court for the legal services identified in the Complaint. All of the Rogers Defendants "purposeful" actions in connection with the Plaintiffs, were conducted in, and directed to Illinois, New Jersey, and Pennsylvania – but not Florida. D.E. 1-2, ¶¶ 3, 4, 5, 7, 9, 10, 11. All of the documents drafted or prepared by JER and Rogers were completed in Illinois with no intention that the documents were drafted for persons or entities located in Florida, or for use in Florida. (Ex. 2, JER Aff. 16). The documents prepared that referenced Longmeadow, Beaumont, or International Video did not identify a Florida address for any of those entities, and employed

Illinois law. *See id.* Further, all communications and correspondence with Plaintiffs and Michael Koretsky in connection with any of the allegations contained in Plaintiffs' Complaint were directed by the Rogers Defendants to either Pennsylvania or New Jersey. (Ex. 2, JER Aff. 17-22); (Ex. 1, Woodford Aff. 11-12). Simply put, it is not reasonably foreseeable that litigation might arise by the Plaintiffs against the Rogers Defendants in Florida. (Ex. 2, JER Aff. 32); *see Thomas v. Brown*, 504 Fed. Appx. 845, 848-49 (11th Cir. Jan. 23, 2013) (affirming dismissal of the complaint for lack of jurisdiction over out-of-state law firm and its shareholders because they did not have sufficient minimum contacts with Florida where the defendants did not have an "office, telephone, bank account, or property of any kind in the state of Florida," they did "not market themselves to Florida and did not conduct any matters related to this lawsuit in Florida," they never traveled to Florida in relation to the case, and no papers or agreements were signed in Florida); *Am. Torch Tip Co*, 2011 WL 3171811, at *6, *supra* n.9; *Harris v. Shuttleworth & Ingersoll, P.C.*, 831 So. 2d 706, 709 (Fla. 4th DCA 2002) (finding that "it was not reasonably foreseeable that Shuttleworth [(a non-resident law firm)] would be involved in Florida litigation when the services it provided related exclusively to Iowa property" in connection with the creation of a trust by the law firm in Iowa where the trust property was located in Iowa).[15]

    2. <u>Exercising Personal Jurisdiction Over The Rogers Defendants Is Not Reasonable.</u>

The United States Supreme Court has added a "reasonableness" determination to its minimum contacts analysis. *Internet Solutions Corp*, 39 So. 3d at 1215; *Madara v. Hall*, 916 F.

---

[15] It is not sufficient that the Koretskys are now or were "residents" of Florida. To have minimum contacts with Florida, "[t]he defendant must have 'purposefully availed himself' or 'purposefully directed' his activities towards the forum state and its residents." *Miot v. Kechijian*, 830 F. Supp. 1460, 1463 (S.D. Fla. 1993) (citations omitted). The Supreme Court has clearly mandated that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros*, 466 U.S. at 417.

2d 1510, 1517 (11th Cir. 1990). In determining whether exercising jurisdiction over a nonresident defendant offends "traditional notions of fair play and substantial justice," a court should consider: (1) the burden on the defendant in defending the lawsuit in the forum state; (2) the interests of the forum State adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief, (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

This Court's exercise of personal jurisdiction over the Rogers Defendants would not only offend traditional notions of justice and fair play, it would blatantly contravene *any* such notion. Defending this action in Florida would place an unreasonable burden on the Rogers Defendants. The Rogers Defendants do not have an office, or any agents in Florida. (Ex. 2, JER Aff. 3, 18, 27, 33, 37, 42, 47). The alleged conduct giving rise to Plaintiffs' claims against the Rogers Defendants occurred in Illinois – with absolutely no actions by the Rogers Defendants occurring in, or directed toward Plaintiffs in Florida. The Rogers Defendants with knowledge of the events described in the Complaint are located in Illinois, as are the co-defendants. (Ex. 2, JER Aff. 3, 18, 27, 33, 37, 42, 47).

In addition, from the face of the Complaint, it appears that this state has no interest in this litigation. While the Koretskys allege they now reside in Florida, they did not invest in JER's Brazilian debt collection business in their individual capacities, and there are no allegations that they resided in or that their companies were domiciled in Florida from 2003 through 2008. *See supra* n.5, 8.

21

To obtain the most convenient and effective relief for Plaintiffs and the judicial system, Plaintiffs should have filed this action in Illinois. The underlying actions giving rise to Plaintiffs' claims against the Rogers Defendants occurred mainly, if not exclusively in Illinois. *See id*. The Rogers Defendants are subject to personal jurisdiction in Illinois. (Ex. 2, JER Aff. 3, 18, 27, 33, 37, 42, 47). The Illinois courts have familiarity with Sugarloaf's Brazilian debt collection business, and the use of the tax shelters. The transaction documents prepared apply Illinois law, with most requiring the disputes arising out of the agreements to be litigated in Illinois.[16] *See supra* §III.A.1; (Ex. 2, JER Aff. 16). Illinois law applies to, and governs Plaintiffs' claims against the Rogers Defendants.[17] In short, Florida has no interest in resolving this controversy.

Because defending this suit in Florida places a tremendous burden on the Rogers Defendants and because the interests of both Florida and the Plaintiffs in forcing the Rogers Defendants to defend the suit here are extremely tenuous, this Court should refrain from exercising jurisdiction over the Rogers Defendants and transfer it to the Northern District of Illinois under 28 U.S.C. §1406(a0, or dismiss the Plaintiffs' Complaint for lack of jurisdiction. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-467 (1962 ) (holding that transfer is authorized pursuant to §1406(a) where there is no personal jurisdiction over the defendant(s) and also no proper venue); *see Miller*, 289 F. Supp. 2d at 1336, *supra* n.1; *Mold-Ex, Inc. v. Mich. Tech. Rep., Inc.*, 2005 WL 2416824, at *6 (N.D. Fla. Sept. 30, 2005) (finding that the Court lacked personal

---

[16] *See supra* n.8-9; [D.E.14-4, Ex. C, p.13]; D.E. 14-5, Ex. D, pp.13-14; D.E. 14-6, Ex. E. p.10.

[17] *See Topp, Inc. v. Uniden Am. Corp.*, 483 F. Supp. 2d 1187, 1191 (S.D. Fla. 2007) ("A federal district court sitting in Florida and deciding a tort claim is required by Florida choice-of-law rules to apply the 'most significant relationship test.'") (citations omitted); *Salerno v. Auto Owners Ins. Co.*, 2006 WL 2085467, at *3 (M.D. Fla. July, 25 2006) ("'Florida law views legal malpractice as a personal tort . . . .") (quoting *Cowan Liebowitz & Latman, P.C. v. Kaplan*, 902 So. 2d 755, 758 (Fla. 2005)).

jurisdiction over the defendant, and concluding that, pursuant to §1406(a), "the case should be transferred to the United States District for the Eastern District of Michigan where [the defendant] is a resident and subject to personal jurisdiction").

## IV. Plaintiffs Filed This Action in an Improper Forum[18]

Venue is proper in this District if (1) "any defendant resides" in this District where "all defendants are residents of th[is] State," (2) "a substantial part of the events or omissions giving rise to the claim occurred" in this State, or (3) "there is no district in which an action may otherwise be brought," then if "any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. §1391(b)(1)-(3). The burden of establishing that venue in this District is proper in on Plaintiffs. *Hemispherx*, 669 F. Supp. 2d at 1356. The cure for venue defects is governed by 28 U.S.C. §1406, which provides that if venue is improper (i.e., the case was filed in "the wrong division or district"), the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." §1406(a). In short, venue is not proper in this District (or in any District in Florida), and the Court should either transfer it to the Northern District of Illinois or dismiss this action.

Here, the Complaint alleges that venue is proper in this District under §1391(b)(2) because "a substantial part of the acts complained of in this Complaint occurred in Broward County." [D.E.1-2, ¶13].[19] But, the Complaint contains no well-pled allegations connecting the

---

[18] Upon a finding of improper venue in this case, the Court need not decide the issue of whether the Rogers Defendants are subject to the personal jurisdiction of this Court. *See Silver*, 2014 WL 4248227, at *2.

[19] Plaintiffs also allege that venue is proper in Broward County, Florida because two of the Plaintiffs (the Koretskys) apparently now reside there. *Id.* The domicile of the Plaintiffs is not relevant to the venue analysis under either Florida or federal law. *See* §1391(b); *see also Hemispherx*, 669 F. Supp. 2d at 1359 ("The focus of a venue inquiry is on the defendant and any actions taken by the defendant."); *Seuling*, 123 So. 3d at 642 (stating venue is proper against a

23

Rogers Defendants or any of the Defendants to this District, or Florida. *See supra* §III.A.1. Because "these allegations are conclusory, not well pleaded, and not entitled to a presumption of truth," they do not support Plaintiffs' choice of forum. *Silver v. Karp*, 2014 WL 4248227, at *3 (S.D. Fla. Aug. 27, 2014) (relying on *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009)).

Further, Plaintiffs cannot establish this District as a proper forum. In analyzing venue under §1391(b)(2), "the Eleventh Circuit has stated that 'only the events that directly give rise to a claim are relevant' and that 'of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered'" with the focus of the inquiry "'on the relevant activities of the Defendants.'" *Silver*, 2014 WL 4248227, at *3 (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)); *Hemispherx*, 669 F. Supp. 2d at 1357. The "substantial part" of the allegedly wrongful conduct by the Rogers Defendants identified in the Complaint giving rise to Plaintiffs' claims against them occurred in Illinois. *See supra* §III.A.1.[20] The Rogers Defendants took no purposeful or direct actions in, or toward Plaintiffs in Florida. *Id.* Thus, Plaintiffs cannot establish that venue is proper in this District under §1391(b)(2).[21]

---

nonresident defendant in any district of this State "whom personal jurisdiction can be obtained consistent with constitutional considerations").

[20] Where a plaintiff's allegation is challenged, "the court may then examine facts outside of the complaint to determine whether venue is proper." *Hemispherx*, 669 F. Supp. 2d at 1356.

[21] *See Hemispherx*, 669 F. Supp. 2d at 1358, 1359 (finding venue improper because "[o]nly those events that have a close nexus to the wrong alleged . . . are the proper bases for venue," and the plaintiff "failed to allege that either the wrong or any actions or events having a close nexus to the wrong, occurred with the Southern District of Florida") (internal citations omitted); *Silver*, 2014 WL 4248227 (dismissing the action for improper venue where "Plaintiff's Complaint contains no well-pleaded allegations connecting any of the Defendants to the Southern District of Florida, and Defendants "contradicted these allegations with affidavits"); *Pawlik v. AmeriLife Group, LLC*, 2014 WL 793080, at * 8 (S.D. Fla. Feb. 25, 2014) (finding venue improper in the Southern District because "the Complaint and Plaintiff's affidavit contain bare-boned allegations and assertions regarding venue being proper in the Southern District of Florida").

In addition, venue is not proper under either of the remaining provisions of §1391.[22] Subsection (b)(1) permits venue in this District only where **all** the Defendants are "residents" of Florida. Under the rubric of the venue statute, the Rogers Defendants are "deemed to reside" "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." §1391(c)(2). As explained above, the Rogers Defendants are not subject to the personal jurisdiction of the Florida courts. *See supra* §III.A-B. And, ignoring (for a moment) whether the Rogers Defendants are subject to the personal jurisdiction of this Court, Plaintiffs have conceded that the Rogers Defendants are "a resident and citizen of Illinois." [D.E. 1-2, ¶7,10, 11]; (Ex. 2, JER Aff. 3, 18, 27, 33, 37, 42, 47). The fact that the Rogers Defendants "reside" only in Illinois, precludes a finding that venue is proper under §1391(b)(1). *See* §1391(c)(1) (stating that "a natural person . . . shall be deemed to reside in the judicial district in which that person is domiciled"). Because **all** of the Defendants do not reside in Florida, venue is not proper under §1391(b)(1).

Finally, venue is not proper under §1391(b)(3). The applicability of this subsection is triggered only where "there is no district in which an action may otherwise brought." Based on the alleged wrongdoing by the Rogers Defendants in the Complaint, venue is proper in Illinois. *See supra* §III.A.1. All of Plaintiffs' alleged actions giving rise to Plaintiffs' claims against the Rogers Defendants occurred in Illinois (as well as the conduct of the remaining Defendant for the claim asserted against them), but also all the Defendants are subject to personal jurisdiction in Illinois. *Id.*; (Ex. 1, Woodford Aff. 17) (Ex. 2, JER Aff. 3, 18, 27, 33, 37, 42, 47). Because venue is proper in Illinois under §§1391(b)(1) and/or (b)(2), subsection (b)(3) is not triggered, and thus Plaintiffs cannot establish venue in this District under that subsection.

---

[22] "When a party challenges venue, the court is required to determine whether the case falls within one of the categories set out in 28 U.S.C. §1391(b)." *Pawlik*, 2014 WL 793080, at * 6.

In sum, because venue is improper in this District, the Rogers Defendants respectfully, request that this Court either dismiss this action or transfer the action to the Northern District of Illinois. *See* §1406 (stating the Court may dismiss or transfer the action upon a finding of improper venue).

The Northern District of Illinois is a proper forum for this action. "A transferee court must sit within a district in which the case originally could have been brought, both with respect to venue and personal jurisdiction." *Hemispherx*, 669 F. Supp. 2d at 1359. Because a substantial portion of the events giving rise to Plaintiffs' claims occurred in Illinois, and because the Defendants are subject to personal jurisdiction in that District, Plaintiffs could have originally filed this action in that District, rendering the Northern District of Illinois a proper venue for this action.

## V.   Conclusion

Based on the foregoing, JER, Rogers, Warwick, Sugarloaf, and Jetstream respectfully request that the Court enter an Order transferring this action to the Northern District of Illinois pursuant to §1406(a), dismissing the Complaint as to the Rogers Defendants for lack of personal jurisdiction and improper venue,  and granting such other relief as this Court deems just and proper.

### Local Rule 7.1(A)(3) Certificate Of Good Faith Conference

I hereby certify that undersigned counsel has conferred with counsel for Plaintiffs, the parties affected by the relief sought in this motion, in a good faith effort to resolve the issues

raised in the motion, and has been authorized to represent that Plaintiffs object to the relief sought.

Respectfully submitted,

By /s/ William M. Martin_____
  WILLIAM M. MARTIN
  Florida Bar # 293156
  PETERSON BERNARD
  Attorneys for John E. Rogers, individually and d/b/a
  Rogers & Associates, Jetstream Business Limited,
  Warwick Trading, LLC, and Sugarloaf Fund, LLC
  707 S.E. 3rd Avenue, Suite 500
  Fort Lauderdale, Florida 33316
  (954) 763-3200
  bmartin@ftl-law.com

27

## Certificate of Service

WE HEREBY CERTIFY that we electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to **Charles H. Lichtman, Esq./Robbie T. Boone, Jr., Esq.**, DRT@bergersingerman.com clichtman@bergersingerman.com; Berger Singerman LLP, *Attorneys for Plaintiffs)* 350 East Las Olas Boulevard, Suite 1000, Ft. Lauderdale, FL 33301, (954-525-9900); and **Wendy J. Stein, Esq.,** wendy.stein@kellerlandsberg Lydia.dellatto@kellerlandsberg.com, Keller Landsberg, P.A., *Attorneys for Seyfarth*, Broward Financial Centre, 500 East Broward Boulevard, Suite 1400, Ft. Lauderdale, FL 33394 (954-525-2134) this 2ND day of October, 2015.

By /s/ William M. Martin_____
WILLIAM M. MARTIN
Florida Bar # 293156
PETERSON BERNARD
Attorneys for John E. Rogers, individually and d/b/a
Rogers & Associates, Jetstream Business Limited,
Warwick Trading, LLC, and Sugarloaf Fund, LLC
707 S.E. 3rd Avenue, Suite 500
Fort Lauderdale, Florida 33316
(954) 763-3200
bmartin@ftl-law.com

WMM/PBS
4947.91510

28